UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

| | |
|---|---|
| IRMA SALES PEREZ, SANDRA ISABEL AQUINO PEREZ, BUENAVENTURA HERNANDEZ, ARACELY CORTEZ, ENODIO SANCHEZ, ANGELINA VELASQUEZ, JOEL GOMEZ SALES and ALICIA MORALES PEREZ, <br><br> Plaintiffs <br><br> v. <br><br> B&H FARMS, LLC <br><br> Defendant. | CIVIL ACTION FILE NO: |

## COMPLAINT

### Preliminary Statement

1. This is an action by eight seasonal farm workers under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, et seq., and under Florida's common law of negligence.

2. This action arises from a September 25, 2020 motor vehicle crash in Collier County, Florida. On that date plaintiffs were overloaded and transported in a van owned by a labor contractor, Inocente Soriano, and were being transported to perform farm labor at one of defendant B&H Farms, LLC's farms in Collier County. While en route, the van was in a head-on collision with another vehicle, rolled over, and seriously injured plaintiffs.

3. At the time of this crash, and during defendant's 2020 vegetable harvest, defendant violated the vehicle insurance provisions of the AWPA. Additionally, because of the defendant's negligent selection and retention of its farm labor contractor, plaintiffs suffered serious bodily injuries.

4. Plaintiffs seek actual damages for these violations of law, including all damages allowable under Florida law.

## Jurisdiction

5. Jurisdiction is conferred upon this Court by 29 U.S.C. § 1854, this action arising under the AWPA; by 28 U.S.C. § 1331, this action involving questions of federal law; and by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce. This Court has supplemental jurisdiction over the claim under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

## Venue

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1854.

## Parties

7. Plaintiffs are Mexican nationals who at all times relevant resided in Collier County, Florida. At all times relevant, plaintiffs were seasonal agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A), in that they were employed in agricultural employment of a seasonal nature.

8. Defendant, B&H Farms, LLC, is a Florida limited liability company with a principal address at 212 Jerome Drive, Immokalee, Florida. At all times relevant defendant operated seasonal vegetable farms in and around Collier County, Florida.

**Facts Giving Rise to Causes of Action**

9. Plaintiffs reallege and incorporate by reference the assertions set forth in Paragraphs one through eight of this complaint.

10. Before the 2020 harvest season defendant hired Inocente Soriano, a farm laborer contractor who was the president of Sigma Harvesting, Inc., ("Sigma Harvesting"), a company which recruited and transported farm workers, including plaintiffs, to hand-harvest tomatoes, squash, watermelon, and other seasonal crops in the Collier County area.

11. In the summer and fall of 2020, Soriano and/or one of his employees and/or agents, including Adelina Vicente Perez, would pick up plaintiffs and other farm workers at preselected locations in Immokalee and drive them to one of two of defendant's farms: one located in Collier County near State Highway 82 (Martin Luther King Drive) and Church Street ("Church Street farm"), the other located in or near Immokalee near a prison. ("Immokalee farm").

12. During the summer and fall of 2020, and at all times relevant, Soriano and/or Sigma Harvesting owned the vans used to transport plaintiffs to defendant's farms.

13. Defendant leased both farm properties from third parties, but at all times relevant controlled both properties for its farming operations. At all times relevant these properties were used solely for defendant's farming operations. Defendant employed its own employees, including full-time field foremen, as well as contracted farm worker crews, on both farm properties.

14. Defendant utilized its own farm equipment and supplies, including tractors, trailers and other heavy equipment, chemicals, and other supplies on both properties. Defendant also had its own shop and storage facilities for this equipment and supplies on both properties.

15. None of the plaintiffs owned their own vehicle at any time relevant to this action, and on all occasions relied upon and were transported by Soriano and Sigma Harvesting from various pick-up locations in Immokalee to defendant's two farms.

16. At all times relevant defendant controlled the following:

    A. Defendant determined when the planting season would start and when plaintiffs could start working on defendant's farms.

    B. Defendant determined when the seasonal work would end, and when plaintiffs were no longer needed to work.

    C. Defendant determined what crops would be planted, the quantity of each crop to be planted, and where the crops would be planted.

    D. Defendant determined all aspects of how and when the farming would be performed, including the planting, irrigating, spraying, laying of plastic, preparing of soil, and harvesting.

    E. Defendant determined which of defendant's farms plaintiffs would work at each day, and which part of each farm.

    F. Defendant determined which crops plaintiffs would plant or harvest each day, and the specific work activity they would do.

    G. Defendant determined how many workers were needed each day and specified to Soriano each day the number of workers he or his employees were to transport to defendant's farms. Alternatively, defendant specified to Soriano on a near-daily basis the number of workers defendant needed.

    H. Defendant owned and provided to plaintiffs all seed and seedlings for the planting plaintiffs performed, and the seeds and seedlings were stored on defendant's farms in structures owned and/or controlled by defendant.

    I. Defendant owned and controlled all farming equipment and supplies, including tractors, trailers, irrigation, supplies, and chemicals, on the farms where plaintiffs worked.

    J. Defendant's field foremen would periodically instruct Soriano or his employees or agents to tell the plaintiffs they needed to work more quickly, and when they needed to move to a different part of the farm.

                Defendant's employees also directly instructed one or more plaintiffs in how to assist with the laying of plastic on the farms.

    K.    Defendant determined the hourly rate of pay to Soriano for his workers' hours, and Soriano in turn paid plaintiffs a lower hourly rate for their work on defendant's farms.

    L.    Defendant paid Soriano a separate amount to transport the workers at a rate defendant determined.

17. On a daily or near-daily basis, officers, employees, and/or agents of defendant, including the manager of defendant's farming operations, Dustin Blank, or one of the two field foremen, Enrique Flores, Sr. or Enrique Flores, Jr., would tell Soriano where to transport the workers the following day, how many workers would be needed, and what crops would be planted or harvested. This was communicated to Soriano as he worked on defendant's farms, or on the afternoon or evening before the next workday.

18. On one or more occasions before the September 25, 2020 accident, while transporting workers to defendant's farms, Soriano and/or his employees would overload the van so that one or more of the van occupants did not have a seat and access to a seat belt.

19. On one or more occasions before the September 25, 2020 accident, Flores, Sr., Flores Jr., and/or other defendant employees and/or agents were present when Soriano's van arrived on defendant's farm properties, and witnessed the number of workers being transported. Therefore, defendant knew or had constructive knowledge that Soriano and/or his employees and agents were overloading the vans while transporting plaintiffs and other farm workers to defendant's farms, and that each worker did not have his or her own seat and access to a seat belt.

20. Upon plaintiffs' arrival at defendant's farms, either Blank, Flores, Sr. or Flores, Jr. would instruct Soriano or one of Soriano's employees where the work would be performed that day. If on a particular day the work in one area of the farm was completed, Flores, Sr. or Flores, Jr. would direct Soriano and plaintiffs to a different part of the farm to work or send them home.

21. All the work plaintiffs performed for defendant was unskilled and rote. On most days plaintiffs would simply drop seeds or seedlings into holes or burrows that had been plowed by tractor by either Flores, Sr., Flores, Jr., and/or another of defendant's employees or agents. On some days plaintiffs would follow the tractor as it plowed. All the seed and seedlings plaintiffs used were provided by defendant and stored at defendant's farms in defendant's storage facilities.

22. Additionally, on some occasions plaintiffs assisted in laying plastic on the ground, which involved use of a machine in which Flores, Sr. or Flores, Jr. would operate the machine while plaintiffs assisted him.

23. On occasion Flores, Sr. or Flores, Jr. would tell Soriano and/or his employees to instruct plaintiffs to work more quickly or provide other instruction to Soriano or his employees to relay to plaintiffs and the other farm workers.

24. Defendant paid Soriano an hourly rate for each hour the plaintiffs and other farm workers worked, and he in turn paid plaintiffs either $10.00 or $11.00 per hour.

25. As set out in paragraphs ten through twenty-four, defendant was at all times relevant an employer or joint employer of plaintiffs under the AWPA, and plaintiffs were economically dependent on defendant.

26. In the early hours of September 25, 2020, plaintiffs were picked up at one of several prearranged locations in Immokalee by Ms. Perez, who was driving a 2019 Chevrolet Express van owned by Soriano. The van had either twelve or fifteen total seats, and Ms. Perez allowed seventeen occupants, including herself, into the van.

27. Ms. Perez was driving plaintiffs to defendant's Church Street farm to begin work for the day, when, at approximately 6:40 a.m., she was in a head-on crash with another vehicle, which caused the van to roll.

28. Because one or more of the plaintiffs did not have their own seat and/or have access to a seat belt, they were either thrown inside the van or ejected from the van. As a result of not having a seat and/or access to a seat belt, one or more plaintiffs sustained serious injuries in the crash they otherwise would not have sustained. Alternatively, one or more plaintiffs' injuries were aggravated by not having their own seat and/or access to a seat belt.

29. In violation of the AWPA, 29 U.S.C. § 1841(b)(1)(A), and its attendant regulations, 29 C.F.R. §§ 500.102(b) and 500.105, defendant caused the transportation of plaintiffs in the 2019 Chevrolet Express van involved in the crash without ensuring that the vehicle conformed to applicable standards prescribed by the Secretary of Labor. Specifically, the van was overloaded so that there was not a seat available for all passengers.

30. Additionally, in violation of the AWPA, 29 U.S.C. § 1841(b)(1)(C) and its attendant regulations, 29 C.F.R. §§ 500.120 and 500.121, Defendant caused the 2019 Chevrolet Express van involved in the crash to be used to transport plaintiffs and other farm workers without having an insurance policy or liability bond that was in full force and effect which insured them in the amounts prescribed by the Secretary of Labor against liability for damages to persons or property arising from the operation of the van.

31. The violations of the AWPA and its implementing regulations as set forth in this count are the natural consequences of the conscious and deliberate actions of the Defendant and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

32. As a direct and proximate result of the September 25, 2020 crash and defendant's violation of the AWPA, plaintiffs have suffered bodily injury and resulting pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The injuries to the plaintiffs are permanent within a reasonable degree of medical probability, and plaintiffs will continue to suffer the losses in the future.

## COUNT 2

### Negligent Retention

33. Plaintiffs reallege and incorporate by reference paragraphs ten through twenty-eight above.

34. At all times relevant defendant had a duty to third parties, including plaintiffs, in its retention of its contractors.

35. As stated in paragraphs eighteen and nineteen, defendant, through its officers, employees, and/or agents, knew or had constructive knowledge that Soriano and/or his employees and/or agents were overloading the vans in which plaintiffs were transported to defendant's farms, and that during these times one or more of the passengers did not have their own seat and/or access to a seat belt, presenting a risk to their safety.

36. However, despite having this knowledge or constructive knowledge, defendant failed to take reasonable action to prevent this from occurring further, such as advising Soriano and/or Soriano's employees and/or agents who drove the vans that overloading the vans would not be tolerated by defendant and would result in termination of Soriano and Sigma Harvesting, Inc.; and/or by failing to investigate, monitor, train, and supervise Soriano and/or his employees and/or agents; and/or by discharging Soriano and Sigma Harvesting, Inc. Alternatively, any such investigation, monitoring, training, and/or supervision was insufficient and negligent.

37. After hiring Soriano and Sigma Harvesting, Inc., defendant had the ability to control overloading of the vans by Soriano and/or his employees and/or agents to substantially reduce the probability of harm to plaintiffs.

38. Further, once defendant had knowledge that Soriano, his employees, and/or his agents had overloaded the vans once, defendant should have known it was reasonably probable Soriano and/or his employees and/or agents would do so again.

39. Finally, defendant knew or should have known that overloading the vans was unreasonably dangerous and that it was reasonably probable that such overloading would cause injuries to the passengers, including plaintiffs, if the vans were involved in a crash.

40. As a direct and proximate result of the September 25, 2020 crash, plaintiffs have suffered bodily injury and resulting pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of previously existing conditions. The injuries to the plaintiffs are permanent within a reasonable degree of medical probability, and plaintiffs will continue to suffer the losses in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray this Court will enter an order:

A. Granting judgment in favor of plaintiffs and against the defendant on the claim set forth in Count 1 of this complaint and awarding each of the plaintiffs his or her actual damages (including pre-judgment interest), for violation of sections 29 U.S.C. § 1841(b)(1)(A) and 29 U.S.C. § 1841(b)(1)(C) of the AWPA and its attendant regulations set forth in that count.

B. Awarding plaintiffs the costs of this action under Count 1.

C. Alternatively, allowing for a jury trial of all issues so triable under Count 2.

D. Granting such further relief as the court deems just and equitable.

DATED this 11th day of October 2022.

*[signature]*

Steven M. Meyers
555 Winderley Place
Suite 300
Maitland, Fl 32751
407-571-6963
(m) 407-448-1257
smm@meyersstanley.com
FB No. 7755869
Counsel for Plaintiffs